UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 17-10031-RWZ

UNITED STATES OF AMERICA

v.

DANY L. BRANDAO

MEMORANDUM AND ORDER

September 19, 2017

ZOBEL, S.D.J.

Defendant Dany L. Brandao stands accused of two counts of possession with intent to distribute and distribution of fentanyl on October 7, 2016 and November 8, 2016 in Brockton, MA, see 21 U.S.C. § 841(a)(1). Count 2 further alleges that the offense involved 40 grams or more of fentanyl, see 841(b)(1)(B)(vi). Brandao has moved to suppress evidence obtained from a search of his residence on the ground that the affidavit in support of the warrant does not provide sufficient information to find probable cause of unlawful activity at that residence. Docket # 28. The court heard the parties' arguments on September 13, 2017.

I.  Facts

On November 4, 2016, as a result of a combined federal and state narcotics investigation, Detective Jeffrey Costello, a Brockton police officer, filed an application for a search warrant of 134 N. Leyden Street, Brockton, MA 02302. See Docket # 29-1,

at 1.[1]  The search warrant was issued by a clerk magistrate of the Brockton District Court.  In support of his application, Det. Costello alleged the following facts, which are undisputed.

### A. Identifying Defendant

In September 2016, a confidential informant ("CI") told East Bridgewater detective Dave Perrault that a Cape Verdean male named "Danny," who drove a white Infinity with Massachusetts license plate number 323FX6, "was dealing heroin/fentanyl in the City of Brockton," id., at 4.  A search on that license plate number showed that the vehicle belonged to Clara Darosa of 134 N. Leyden Street, Brockton, MA, who, police uncovered, is the mother of Dany Brandao.  The CI positively identified Brandao as the individual he spoke of as "Danny."

In response to specific requests, Federal Probation Officer Jessica Turkington informed the police that Brandao was on federal supervised release in this court pursuant to a sentence for possession with intent to distribute over 1 kilogram of heroin.  She "confirmed that Brandao lives at 134 N. Leyden Street, Brockton, MA," and further provided his contact telephone number.  Id.

### B. The Controlled Buys

The affidavit describes four separate controlled buys from defendant.

#### 1. October 7, 2016

On October 7, 2016, Det. Perrault, acting in his undercover capacity, arranged to

---

[1]  Although the docketed search warrant affidavit attached to defendant's motion is redacted, at the hearing on September 13, 2017, defendant's attorney submitted an unredacted copy to the court reflecting the address of the residence to be searched.

meet with Brandao to purchase 2.5 grams of heroin for $150.00. Brandao directed Det. Perrault to meet him at Hamilton Street in Brockton, MA. Several other agents established surveillance of Hamilton Street. At 1:07 pm, Det. Perrault sent a text message to Brandao to inform him that he was at the location. Approximately eight minutes later, Brandao arrived in an Infiniti sedan bearing the license plate number 323FX6. Det. Perrault entered the passenger side of Brandao's vehicle. Brandao handed Det. Perrault a small clear plastic bag that contained a white powdery substance, which officers later determined to be fentanyl and acetyl fentanyl. Det. Perrault paid Brandao $150.00 and left Hamilton Street, at which point agents terminated surveillance of Brandao.

### 2. October 11, 2016

On October 11, 2016, Det. Perrault made a second controlled purchase of fentanyl from Brandao. Shortly after 11:00 am, officers established surveillance of 134 N. Leyden Street and observed the Infiniti sedan with the license plate number 323FX6 parked outside the residence. At approximately 2:15 pm, Brandao responded to Det. Perrault, who arranged to purchase 5 grams of heroin/fentanyl from Brandao. They agreed to meet at the same spot on Hamilton Street as they did on October 7. Around 2:40 pm, an undercover agent observed Brandao leave 134 N. Leyden Street and get into the Infiniti sedan. Brandao drove directly from 134 N. Leyden Street to the meeting spot on Hamilton Street and arrived at 2:47 pm. Det. Perrault got out of his vehicle and into Brandao's car to conduct the controlled buy. In exchange for $300.00, Brandao gave Det. Perrault two clear plastic bags, each containing white powder, which Det. Perrault believed to be fentanyl. Officers terminated surveillance once Det. Perrault left.

### 3. October 25, 2016

On October 25, 2016, officers established surveillance of 134 N. Leyden Street around 11:00 am. At 11:37 am, Det. Perrault made contact with Brandao and agreed to meet in twenty-five minutes on Hamilton Street. Around 12:12 pm, agents observed Brandao leave 134 N. Leyden Street and get into a white Ford Fusion that had been parked across the street from the residence. Officers ran a search of the vehicle's license plate and learned that it was a rental car leased to Brandao's girlfriend. Brandao drove directly from 134 N. Leyden Street to Hamilton Street and arrived around 12:21 pm. Again, Brandao gave Det. Perrault two plastic bags that each contained 2.5 grams of white powder, which Det. Perrault again believed to be fentanyl, in exchange for $300.00. No further surveillance was conducted after Det. Perrault left the scene.

### 4. November 1, 2016

Officers arranged another control buy on November 1, 2016. At 9:00 am, an agent drove by 134 N. Leyden Street. He observed a Jeep Grand Cherokee with a Massachusetts license plate number 5HB249 parked across the street from the residence. The Department of Motor Vehicles records reflected that the car was registered to Brandao.

Around 11:00 am, Det. Perrault contacted Brandao to purchase ten grams of heroin for $550.00 but did not receive a reply. Meanwhile, the officer who was conducting surveillance of 134 N. Leyden Street observed a gray minivan arrive and park in front of the residence around 12:50 pm. The officer further observed a heavy

set male get out of the minivan and walk to 134 N. Leyden Street. After five minutes, the heavy set male returned to the minivan and drove off. At 1:10 pm, Brandao responded to Det. Perrault and they agreed to meet at the same spot on Hamilton Street in twenty-five minutes. At 2:00 pm, officers observed Brandao exit 134 N. Leyden Street, get into the Jeep Grand Cherokee, and drive directly to Hamilton Street. He arrived at 2:07 pm. Det. Perrault entered the Jeep Grand Cherokee and handed Brandao $550.00. After counting the cash, Brandao removed a piece of the trim on the dashboard and "removed a large clear plastic bag," which contained "4 smaller bags," which he handed to Det. Perrault. Docket # 29-1, at 11. Officers later confirmed the bags contained fentanyl. Although officers maintained surveillance of Brandao "for a short time" after the buy, nothing further was observed. Id.

    **C.    The Search**

Three days after the fourth controlled buy, a Brockton District Court clerk magistrate issued a warrant authorizing the search of 134 N. Leyden Street for drug paraphernalia and related materials, including documents, records, and sums of money. On November 8, 2016, officers executed the search of 134 N. Leyden Street and seized several bags of fentanyl, related drug paraphernalia, a handgun, and several rounds of ammunition.

**II.    Standard of Review**

When a defendant challenges a search that was conducted pursuant to a warrant, the defendant bears the burden to show by a preponderance of the evidence that the warrant was unlawful. United States v. Legault, 323 F. Supp. 2d 217, 220 (D.

Mass. 2004). A reviewing court "must examine the affidavit in a practical, commonsense fashion, and [] accord 'considerable deference' to a magistrate's determination that information in a particular affidavit establishes probable cause." United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999) (quoting United States v. Zayas-Diaz, 95 F.3d 105, 111 (1st Cir. 1996)). In deciding whether probable cause exists, "a magistrate has to make 'a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Feliz, 182 F.3d at 86 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). A reviewing court must affirm "so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing," Illinois v. Gates, 462 U.S. 213, 236 (1983) (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).

**III.    Analysis**

"A warrant application must demonstrate probable cause to believe that (1) a crime has been committed—the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched—the so-called 'nexus' element." Feliz, 182 F.3d at 86 (citing Zayas-Diaz, 95 F.3d at 111). Brandao moves to suppress all items seized during the search of 134 N. Leyden Street because, he contends, there was no probable cause for the search warrant. Specifically, he argues that the search warrant affidavit failed to contain any information to establish a "nexus" "that would link Mr. Brandao's alleged activities to the residence," Docket # 29, at 14.

In contending that the affidavit failed to demonstrate a nexus between the four controlled buys and 134 N. Leyden Street, Brandao seeks to distinguish the facts of his

6

case from United States v. Barnes, 492 F.3d 33 (1st Cir. 2007), and the cases cited therein.[2]  Specifically, he highlights that (1) he was not seen carrying anything as he walked from his residence to the car; (2) the police had not conducted extensive surveillance of him prior to the controlled buys; (3) there was no specific allegations of suspicious activity at the residence, including observations of drugs within or near the residence; and (4) he was not seen trying to throw off the police from his residence by taking a roundabout route.

Brandao's arguments are unavailing.  "The probable cause standard 'does not demand showing that such a belief be correct or more likely true than false.'" Feliz, 182 F.3d at 86 (quoting Texas v. Brown, 460 U.S. 730, 742 (1983)).  According to the affidavit, Brandao resided at 134 N. Leyden Street, Brockton.  The affidavit describes

---

[2]  Defendant argues that suppression is also required under Massachusetts state law because the warrant was originally issued in a state court.  He contends that the facts of his case are "substantively identical to the fact pattern [in Commonwealth v. Pina, 902 N.E.2d 917 (Mass. 2009)]," Docket # 29, at 9, which held that "probable cause to expect that drugs will be present in a home is not established by the fact that defendant lives there."  Pina, 902 N.E.2d at 919.  During the hearing, defendant's counsel conceded, however, that federal–not state–law applies to defendant's motion to suppress.  Regardless, even under Massachusetts case law, defendant's motion fails.  "No bright-line rule can establish whether there is a nexus between suspected drug dealing and a defendant's home." Commonwealth v. Escalera, 970 N.E.2d 319, 326 (Mass. 2012).  Here, the affidavit contained the following information: (1) Brandao drove directly from his residence to the drug transactions for three of the four controlled buys (no surveillance was set up for the first buy); (2) Brandao was able to provide various quantities of fentanyl (2.5 - 10 grams) to Det. Perrault upon short notice; and (3) each controlled buy took place a few miles from Brandao's residence.  Under these facts, the magistrate clerk had a substantial basis to find probable cause existed.  Commonwealth v. O'Day, 798 N.E.2d 275, 279–80 (Mass. 2003); see Escalera, 970 N.E.2d at 326 ("Observations by police of a suspect on multiple occasions leaving his residence and proceeding directly to a prearranged location to sell drugs can support a reasonable inference that the suspect is a drug dealer who stores drugs or packages drugs for resale in his residence."); id. at 328 (Information in the affidavit that reflects that "the defendant could deliver drugs in variable quantities on short notice, further support[s] the inference that the defendant kept a supply of drugs in his home."); see also Commonwealth v. Hardy, 824 N.E.2d 883, 886–87 (Mass. App. Ct. 2005) ("The fact that police never observed . . . evidence of drug transactions at the defendant's residence . . . is not fatal to probable cause, because the defendant's usual method of operation was to deliver drugs away from his [residence].").  The Escalera court also rejected defendant's argument that use of the same vehicle during the transactions provide affirmative evidence that drugs were not being stored in defendant's residence.  Instead, the court explained that "evidence of the defendant's drug sales might also have been found in the defendant's vehicle does not detract from the conclusion that there was probable cause to search the apartment." Escalera, 970 N.E.2d at 328.

7

that on three of the four controlled buys, police observed Brandao leave that residence shortly after making contact with the undercover detective and proceed directly to the location where the drug transactions took place. Further, on November 1, 2016, when Det. Perrault arranged to buy a larger quantity of drugs than the previous three controlled buys, law enforcement observed a man make a quick visit in a gray minivan to Brandao's residence. Shortly after this visit, Brandao made contact with Det. Perrault to sell the drugs. Taken together, this evidence gives rise to a reasonable inference that Brandao used his residence to receive drugs for distribution. Under the totality of the circumstances set forth in the affidavit, these events establish the requisite nexus between the residence and the alleged criminal activity.[3] See United States v. Ribeiro, 397 F.3d 43, 50–51 (1st Cir. 2005) (upholding finding that probable cause existed to search defendant's residence when, among other facts, defendant was observed driving directly from his residence to the location of drug transactions); see also Barnes, 492 F.3d at 37 (finding that "the totality of the circumstances strongly suggested that there was evidence of drug dealing" at the residence when defendant was observed exiting his residence immediately prior to selling drugs). While evidence of long-time trafficking and prior police surveillance "may increase the odds that inculpatory material exists at a dealer's residence . . . lack of evidence of long-term trafficking does not eliminate the nexus." United States v. Pina, No. 00-10208-PBS, 2003 WL 21212735, at *3 (D. Mass. May 21, 2003).

---

[3] Because I find that probable cause existed for issuance of the search warrant, I do not address defendant's argument that the "good faith exception" to the exclusionary rule does not apply.

**IV.	Conclusion**

Defendant Brandao's Motion to Suppress (Docket # 28) is DENIED.

|  |  |
|---|---|
| September 19, 2017 | /s/Rya W. Zobel |
| DATE | RYA W. ZOBEL<br>SENIOR UNITED STATES DISTRICT JUDGE |